**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **ELAINE L. CHAO, Secretary of Labor, UNITED STATES DEPARTMENT OF LABOR,** | ) CASE NO. 8:06CV676 ) ) ) |
| **Plaintiff,** | ) **MEMORANDUM** ) **AND ORDER** |
| v. | ) ) |
| **BARBEQUE VENTURES, LLC, BARBEQUE VENTURES OF NEBRASKA, LLC, and OLD MARKET VENTURES, LLC,** | ) ) ) ) ) |
| **Defendants.** | ) |

This matter is before the Court on Plaintiff's Motion for Summary Judgment, Filing No. 29, in which the Plaintiff, Elaine L. Chao, Secretary of Labor, United States Department of Labor ("DOL"), asks this Court for an order granting summary judgment on all causes of action. The matter has been fully briefed and is ripe for disposition. For the reasons stated below, the Motion for Summary Judgment is granted in all respects except DOL's request for an injunction.

**FACTS**

The parties in this case have presented a record that is largely undisputed.[1] DOL filed a complaint seeking back wages for twenty-five employees who worked at more than one Famous Dave's restaurant in the greater Omaha, Nebraska, area from May 2004 to

---

[1] The Defendants object to only two of the Plaintiff's Statements of Undisputed Material Facts. *See*, Filing No. 36, Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment, p. 2 (objecting to only Statements No. 2 and 34). Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response. NECivR 56.1(b)(1). Thus, other than facts number 2 and 34, the Defendants are deemed to have admitted the Plaintiff's Statements of Undisputed Material Facts.

March 2006, in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").  During that time, four Famous Dave's restaurants were owned by Barbeque Ventures of Nebraska, LLC (collectively "Barbeque Ventures' Famous Dave's"): 17330 West Center, Omaha, Nebraska; 71st and Ames, Omaha, Nebraska; 2015 Pratt Avenue, Bellevue, Nebraska; and 50 Arena Way, Council Bluffs, Iowa.  (Filing No. 31, Plaintiff's Index of Evidence, Exhibit 2, Defendant's Supplemental Answers to Plaintiff's First Interrogatories "Supplemental Interrogatory Answers," Resp. to Interrog. No. 20.)  A fifth Famous Dave's restaurant ("Old Market Famous Dave's") was owned by Old Market Ventures, LLC, which had as its majority shareholder Barbeque Ventures of Nebraska, and had as its minority shareholder Greg Cutchall ("Cutchall").[2]  (*Id.*; Filing No. 31, Exhibit 1, Deposition of Willy Theisen, "Theisen Dep." 19:11-24.; Filing No. 31, Exhibit 4, Deposition of Greg Cutchall, "Cutchall Dep." 25.)

In June of 2004, Barbeque Ventures of Nebraska changed its name to Barbeque Ventures, LLC, and so notified the Nebraska Secretary of State.  (Filing No. 31, Exhibit 3, Defendant's Answers to Plaintiff's First Interrogatories, "Interrogatory Answers," Resp. to Interrog. No. 11).  Thereafter, Barbeque Ventures, LLC, owned and operated the four

---

[2] In March 2006, Cutchall purchased Barbeque Ventures' interest in Old Market Ventures, and became the sole owner of Old Market Ventures.  (Supplemental Interrogatory Answers, Resp. to Interrog. No. 20.)  On January 31, 2007, the four Barbeque Ventures Famous Dave's were sold to Old Market Ventures.  (*Id.*)  The sale document purported to leave Barbeque Ventures with any liability for back wages that may have existed at the time of the sale. (Cutchall Dep. 30:8-16; Filing No. 31, Exhibit 6, Purchase Agreement, p. 2.)  The Defendants do not argue that the Purchase Agreement has any bearing on the liability of either Defendant in this matter and, therefore, the Court does not address that issue.

2

Barbeque Ventures' Famous Dave's and was the majority owner of Old Market Famous Dave's.[3]

During the relevant time, Barbeque Ventures of Nebraska, LLC, and Barbeque Ventures, LLC, were owed solely by Willy Theisen ("Theisen").  Theisen operated Barbeque Ventures as an owner and had control of the business.  (Theisen Dep. 16:4-23.) In addition to being the sole owner of Barbeque Ventures, Theisen elected himself to be the manager of Old Market Ventures pursuant to its operating agreement.  (*Id.* at 21:9-18.) As owner of Barbeque Ventures and Manager of Old Market Ventures, Theisen supervised the Area Director who was in charge of the restaurant managers.  (*Id.* at 21:13-18).  Each individual restaurant manager was in charge of the employees at that location.  (*Id.*) Theisen met weekly with the Area Director regarding the operations of all five Famous Dave's restaurants.  (Filing No. 31, Exhibit 9, Deposition of Matt Diamond, "Diamond Dep." 25:3-8; 55:18-20.)  Theisen also signed the payroll checks for all five restaurants.  (*Id.* at 20:4-5; 33:18-25.)  Theisen and Cutchall were experienced restaurant and business owners prior to their ownership of the Famous Dave's restaurants.  Theisen founded the Godfather's Pizza chain of restaurants and Cutchall was the owner of twelve Popeye's restaurants in the Omaha area.  (Theisen Dep. at 8:16-10:6; Cutchall Dep. at 8:11-24.)

In addition to Theisen's oversight, all five Famous Dave's restaurants were overseen by a single Area Director.  (Diamond Dep. at 19:14-20; 25:12-15.)  Jeff Parker

---

[3] Because it does not appear that Barbeque Ventures of Nebraska, LLC, is a separate company from Barbeque Ventures, LLC, DOL is not seeking separate injunctive or monetary relief against Defendant Barbeque Ventures of Nebraska, LLC.  Filing No. 30, DOL Brief, p. viii, fn. 1.  Accordingly, the Court uses "Barbeque Ventures" to refer to both Barbeque Ventures of Nebraska, LLC, and Barbeque Ventures, LLC.

3

was the Area Director until he was replaced by Matt Diamond in late 2005.  (*Id.* at 19:24-25.)  As Area Director, Diamond visited each of the stores at least twice a month.  (*Id.* at 28:4-13.)  During these visits, Diamond recognized some of the employees and knew that some of them were working at multiple Famous Dave's restaurants.  (*Id.* at 29:12-30:12.)  Further, the record reflects that many of the employment applications of the employees who worked at more than one Famous Dave's location indicated that they were currently working at another location in the Omaha Metro area.  (*Id.* at 63:13-64:25; Filing No. 31, Exhibit 10, Employment Applications.)

During the relevant time, the payrolls for Barbeque Ventures and Old Market Ventures were processed by an independent third party, Payroll Management Incorporated.  (Interrogatories Answers, Resp. to Interrog. Nos. 9.)  In February 2006, DOL Wage and Hour Investigator Carol Halterman was assigned to investigate the Bellevue Famous Dave's.  (Filing No. 31, Exhibit 7, Affidavit of Carol Halterman ("Halterman Aff.") ¶ 2.)  The investigation was expanded on a limited basis to all Famous Dave's locations in the greater Omaha area to determine whether employees working at multiple locations were being paid overtime for all hours worked over forty per week.  (*Id.* at ¶ 3.)  Prior to the DOL Wage and Hour Investigation, Payroll Management did not cross-reference the payroll records to see whether employees were working at more than one Famous Dave's restaurant.  (*Id.*)  There is no evidence that the Defendants requested that Payroll Management track overtime across all restaurants prior to the DOL Wage and Hour Investigation.

4

In response to the investigation, Famous Dave's Restaurants, through counsel, provided payroll records, W-2 forms, and personnel reports on current and former employees. (*Id.* at ¶ 5.) Based on these records, DOL determined that twenty-five employees had worked at more than one Famous Dave's restaurant in excess of forty hours per work week without receiving overtime pay. (*Id.* at ¶¶ 6, 7 and 8.)

During the initial briefing of this motion, DOL attached as an exhibit a WH-55 form that contained calculations that were contrary to the affidavit of Halterman. (Filing No. 31, Exhibit 7 and Exhibit 8.) DOL's counsel contacted the Defendants' counsel before the Defendants filed their brief in opposition, and disclosed that she had erroneously attached a draft WH-55 form instead of the correct WH-56 form. (Filing No. 39, Reply Brief, Page 6.) In its reply brief, DOL provided a second affidavit from Halterman correcting her calculations based on the March 2006 sale date of Barbeque Ventures' interest in Old Market Ventures to Cutchall. (Filing No. 40, Exhibit 1, Carol Halterman Affidavit dated November 20, 2007, "Halterman Aff. II" ¶ 13.) DOL also provided a WH-56 form with the correct back wage calculations.[4] (Filing 40, Exhibit 2, WH-56.) Both Halterman affidavits and the WH-56 show that thirteen employees worked for more than one of the Barbeque Venture's Famous Dave's locations for more than 40 hours per work week. (Halterman Aff.

---

[4] Halterman's second affidavit conflicts with the WH-56 form. Although the total amount of damages requested in the second affidavit is the same as the amount stated on the WH-56 form, the amounts allegedly due from each defendant are different. The individual amounts owed to each employee listed in the affidavit who worked for Barbeque Ventures totals $74.34 less than the amount requested in the affidavit. Specifically, $57,712.14 is requested in the affidavit versus $57,637.80 on the WH-56 form. The individual amounts owed to each Old Market employee total $32,417.87 – $74.34 more than the $32,343.53 listed in the second Halterman affidavit. (Halterman Aff. II and WH-56 form.)

5

¶ 11; Halterman Aff. II ¶ 12; Filing No. 40, Exhibit 2, WH -56.)  Adding together the amounts for those individuals on the WH-56 form, they are due $57,637.80 in overtime payments.  (*Id.*)  Additionally, both Halterman affidavits and WH-56 show that twelve employees worked for at least one Barbeque Ventures Famous Dave's restaurant and the Old Market Famous Dave's.  (Halterman Aff. II, ¶ 10 and 11; Filing No. 40, Exhibit 2, WH-56.)  These individuals are owed $32,417.87 in overtime payments.  (*Id.*)

The Defendants admit that, prior to 2006, they did not monitor nor did they combine hours worked by an employee at more than one location for overtime purposes.  (Interrogatory Answers, Resp. to Interrogs., Nos. 8 and 9.)  However, after the investigation, the Defendants created a master roster of employees who worked at all Famous Dave's locations and cross-referenced employees against the master roster to determine which individuals were employed at multiple locations.  (Supplemental Interrogatory Answers, Resp. to Interrog. No. 15.)  For individuals working at multiple locations, Defendants now monitor the employees' hours to ensure that all hours are paid at the correct rate under the FLSA.  (*Id.*)

In its motion for summary judgment, DOL requests that this Court enter a judgment against Barbeque Ventures for back wages, liquidated damages, and post-judgment interest based on its failure to pay proper overtime compensation for employees who worked at more than one Barbeque Ventures Famous Dave's.  DOL further requests judgment against Barbeque Ventures and Old Market Ventures jointly for back wages, liquidated damages, and post-judgment interest based on the failure to pay proper overtime compensation for employees who worked at the Old Market Ventures's Famous Dave's restaurant and at least one of the Barbeque Ventures Famous Dave's restaurants.

Finally, DOL seeks an injunction against all the Defendants for any further violations of the FLSA.

**SUMMARY JUDGMENT STANDARD**

In the context of a summary judgment motion, the Court's function is to consider the evidence and determine whether the moving party is entitled to judgment as a matter of law. The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed.R.Civ.P. 56(c)). In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

**ANALYSIS**

<u>*COVERAGE BY THE FLSA*</u>

In order to be covered by the FLSA's overtime rules, employees must be "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce." 29 U.S.C. § 207(a)(1). Coverage exists if the employer is an enterprise engaged in commerce, 29 U.S.C. § 203(s) (defining "enterprise engaged in commerce" as an enterprise that has employees engaged in commerce or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and has annual gross sales volume of not less than $500,000). *See also*, *Chao*

*v. A-One Medical Services*, 346 F.3d 908, 914 (9th Cir. 2003).  In this matter, both Barbeque Ventures, LLC, and Old Market Ventures, LLC, concede that they meet the criteria for enterprise coverage under 29 U.S.C. § 203(s)(1)(A)(I) and (ii), and are, therefore, separately subject to 29 U.S.C. § 207.  (Interrogatory Answers, Resp. to Interrog. No. 12.)

Under the FLSA, covered employers must pay overtime compensation to employees who work more than forty hours in one week. 29 U.S.C. § 207(a)(1).  The two primary issues in this matter are (1) whether the restaurants are a single business enterprise, triggering overtime for employees working at more than one restaurant for a total of more than 40 hours a week, and (2) whether Old Market Ventures and Barbeque Ventures are joint employers.

### Single Business Enterprise

As indicated above, each Defendant admits that it is an "enterprise;" however, each denies that Barbeque Ventures and Old Market Ventures should be combined to constitute a single enterprise.  Under 29 USC § 203 (r):

> 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.

29 U.S.C. § 203(r)(1).  As an "enterprise," Barbeque Ventures, or Barbeque Ventures and Old Market Ventures together, would be subject to the requirement that any employee whose work for either or both companies totals more than 40 hours in a workweek be paid overtime.  See § 207(b) and C.F.R. 779.201.  To determine whether multiple corporations

8

constitute a single enterprise, courts examine three factors: (1) related activities; (2) unified operation or common control; (3) common business purpose. *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846-47 (8th Cir. 1975).

  1. Related Activities

"[A]ctivites are "related" when they are the same or similar, such as those of the individual retail or service stores in a chain. . . ." *Plaza Shoe Store*, 522 F.2d at 847 *citing* S. Rep. No. 145, 87th Cong., 1st Sess. 41 (1961), reprinted in 1961 U.S. Code Cong. & Admin. News pp. 1620, 1660.  The term "related activities" is interpreted by the Wage-Hour Administrator, for an enterprise which has one or more retail or service establishments, as "all of the activities which are performed for the furtherance of the common business purpose of operating the retail or service establishments. . . . Whether on the same premises or separate locations, the activities involved in retail selling of goods or services of any type, are related activities and they will be considered one enterprise where they are performed, through unified operation or common control, for a common business purpose." *Plaza Shoe Store*, 522 F.2d at 847, citing 29 C.F.R. § 779-207 (1974); *see also* 29 C.F.R. 779.202.

The Defendants assert that there are multiple differences between each restaurant in design and seating, and that there was separate management personnel who acted autonomously in scheduling employees, giving rise to an issue as to whether they conducted related activities.  However, the facts clearly show that all five stores were restaurants selling barbeque food under the Famous Dave's name.  These activities clearly fall within in the congressional and administrative concept of "related activities."  *See Plaza*

9

*Shoe Store*, 522 F.2d 848 (finding that a shoe store and clothing store were engaged in the related activity of selling apparel.)

    2.    Unified operation or common control

Common control exists "where the performance of the described activities is controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. § 779.221. The Defendants argue that because each restaurant obtained separate liquor licenses, made purchasing orders independent of other locations and was "empowered" to create and set store-specific policies regarding discipline and attendance, the restaurants were not under common control. However, these differences are not determinative of unified operation or common control. *See Plaza Shoe Store*, 522 F.2d at 844 (single business enterprise found despite stores having visually distinguishable decor, separate worksheets, inventory and bank accounts, advertising, and sales staff were separately paid, hired, trained and fired); *see also, A-One Medical Services,* 346 F.3d at 913 (holding two companies were one enterprise for purposes of the FSLA even though employees completed separate employment applications and, in some cases, were paid at different rates).

This Court finds that the four Barbeque Venture restaurants were under common control with the Old Market Ventures restaurant. The Old Market Famous Dave's was overseen by the same Area Director as the four Barbeque Ventures Famous Dave's. Barbeque Ventures was the majority owner of the Old Market Famous Dave's, and importantly, Theisen managed all five restaurants.

3.    Common business purpose

Common business purpose exists when "a corporation is formed to carry out a particular business objective, all the activities in furtherance thereof which it may perform through unified operation or common control will, in economic reality, be related and for a common business purpose . . . ." *Plaza Shoe Store*, 522 F.2d at 848, *citing Wirtz v. Columbian Mutual Life Insurance Co.,* 380 F.2d 903 (6th Cir. 1967) (citations omitted).  It is clear in this case that the four Barbeque Ventures Famous Dave's, as well as for the Old Market Ventures Famous Dave's, had a common business purpose.

The Court finds that the four Barbeque Venture restaurants were a single business enterprise for purposes of the Act.  29 C.F.R. § 779.204(b) (multiunit business - one company conducts a single business in a number of establishments - is a single business enterprise for purposes of the Act.)  Additionally, the Court finds that the Old Market Famous Dave's was part of the same single business enterprise, as it had related activity, and shared common control and a common business purpose.

*Joint Employers*

Whether two companies constitute a single enterprise for purposes of the Act, and whether they are liable as joint employers under § 207, are technically separate issues. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).  However, the factual considerations may be the same or very similar.  *See Id.*  Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA. According to the Department of Labor regulation:

> [I]f the facts establish that the employee is employed jointly by
> two or more employers, i.e., that employment by one employer
> is not completely disassociated from employment by the other

> employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA].

29 C.F.R. § 791.2(a) (emphasis added); *see also Falk v. Brennan*, 414 U.S. 190, 195 (1973) (observing in a FLSA case that apartment building maintenance workers were employed by both building management company and building owners). "[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions." 29 C.F.R. § 791.2(a). The regulation further states that "a joint employment relationship generally will be considered to exist in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

Relying on the Section 3(d) definition of employer, courts have found joint employment based on economic interests, even when an employee works for separate legal entities at different locations. *Hearnsberger v. Gillespie*, 435 F.2d 926 (8th Cir. 1970). In *Gillespie*, Defendant L.E. "Cotton" Gillespie individually owned a farm and was also the primary stockholder in Eudora Livestock Auction Company, Inc. *Id.* at 927. Based on the

economic ties between the two employers, the Eighth Circuit held that a finding of joint employment was "firmly sustained by the Act and by case law."  *Id.* at 931.

In this case, the economic ties between the companies are unambiguously apparent.  During the relevant period, Barbeque Ventures and Theisen retained complete control of all five restaurants and benefitted from their operations.  Thus, the Court finds that, from May 2004 until March 2006, Barbeque Ventures and Old Market Ventures were joint employers for purposes of liability for overtime due to employees working at more than one location.

## CALCULATION OF DAMAGES

DOL initially calculated back wages by tallying the number of hours each employee worked in each two-week pay period between May 2004 and May 2006.  DOL determined each employee's regular rate of pay by averaging the amounts he or she was paid by the various Famous Dave's locations, then multiplied 50% of that regular rate of pay by the number of hours over 80 per pay period that each employee worked.  (Halterman Aff. ¶ 8.)  *See* 29 U.S.C. § 211(c); 207(a)(1) (weekly overtime should be paid at 1.5 times an employee's regular rate of pay).  DOL in its reply brief provided a second affidavit of Carol Halterman and a WH-56 form with revised calculations for the Old Market Venture employees from May 2004 through March 2006 (the sale date of Barbeque's interests in the Old Market Famous Dave's to Greg Cutchall). (Filing No. 39 and 40.)

The Defendants argue that the errors between the first Halterman Affidavit and Exhibit 8, the WH-55 created a genuine issue of material fact as to the amount of damages.  However, the revised WH-56 form that was provided to the court with the Reply Brief resolved issues related to the amount due.  The Court recognizes that there is a

mathematical error in the second Halterman affidavit regarding the amount due from each Defendant; however, the total amount due from both Defendants is the same as the total amount listed in the WH-56. Therefore, the Court relies on its own calculations based on the revised WH-56 which provides the amount due to each individual employee. Defendants do not contest any of the specific calculations on either the WH-55 or WH-56 form, nor do they provide an alternative damage calculation.[5] (Filing No. 36. Brief in Opposition to Plaintiff's Motion for Summary Judgment, p. 10-11). Additionally, the Defendants failed to track wages based on a 40-hour week and, therefore, cannot be heard to complain about the precision of the calculation of the amount due. *Wirtz v. First State Abstract & Ins. Co.*, 362 F.2d 83 (8th Cir. 1966).

Based on the uncontroverted WH-56 form, the Court finds that employees who worked at the Old Market Famous Dave's and at least one of the Barbeque Ventures Famous Dave's are owed $32,417.87 in back wages. Employees who worked only at Barbeque Venture Famous Dave's restaurants are owed $57,637.80 in back wages.

**LIQUIDATED DAMAGES**

An employer who violates the overtime law is liable not only for the unpaid overtime compensation but also "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An award of liquidated damages is "intended in part to compensate employees for the delay in payment of wages owed under the FLSA[.]" *Braswell v. City of El Dorado, Ark.,* 187 F.3d 954, 957 (8th Cit. 1999), *citing, Hultgren v. County of Lancaster,* 913 F.2d 498, 508-09 (8th Cir.1990). An award of liquidated damages under section 216(b) is

---

[5] The Defendants did not attempt to strike the revised Affidavit or WH-56, nor did they request leave to file a sur-reply brief to address the new calculations.

mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA. *Id.; see also Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987) ("the district court's decision whether to award liquidated damages does not become discretionary until the employer carries its burden of proving good faith. In other words, liquidated damages are mandatory absent a showing [by the employer] of good faith."). The employer bears the burden of proving an honest intention to ascertain and follow the dictates of the FLSA. *Hultgren v. County of Lancaster, Ne.,* 913 F.2d 498, 509 (8th Cir. 1990.)

The Defendants assert that they have demonstrated good faith and reasonable grounds for believing they were not in violation of the FLSA by showing that Theisen and Cutchall did not have direct knowledge that employees may have worked at different locations. (Theisen Dep. 46: 2-10; Cutchall Dep. 39: 15-19). Further, the Defendants attempt to claim that they reasonably believed that employees were being paid at the appropriate rates by the third-party payroll company and were unaware that the third-party payroll administrator may have failed adequately to track employees who had been working at different locations. (Theisen Dep. 46:11-25; 47:1-5). The Defendants also claim that at no point did any employees inform the Company that they believed that they had been denied overtime pay or that their pay calculations were in error. (Filing No. 37, Exhibit B, Affidavit of Matt Diamond, ¶ 8).[6]

---

[6] The Defendants argued that with regard to at least one employee, there is evidence that employee may have sought to disguise his identity, and therefore, it would have been impossible for the Defendants to track that employee's overtime. (Filing No. 31, Exhibit 2, No. 9.) However, the only evidence provided to the Court that any employee attempted to hide his identity is that one employee, Lorenzo Vargas, did not list his middle initial on his application to work at the Bellevue Famous Dave's as he had on his

15

While Theisen and Cutchall claim no direct knowledge that employees may have worked at different locations, it is clear that their managers knew this was occuring. (Diamond Dep. 30:7-12; Filing No. 31, Exhibit 10, Employment Applications.) "[A] court need only inquire whether, under the circumstances, the employer either had knowledge of the overtime hours being worked or had the opportunity through reasonable diligence to acquire the knowledge." *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997). The Defendants' argument that senior management was unaware that employees may have been working at multiple locations is unreasonable based on senior management's relative sophistication. Cutchall testified that he was aware of the FLSA's overtime regulations, and he has had work rules in place at his twelve Popeye's restaurants to ensure that employees working at multiple locations received proper overtime compensation for the past four to five years. (Cutchall Dep., 17:25-18:17.)

The Defendants have provided no evidence showing that they attempted to determine whether employees were working at more than one location. The Defendants state in their answers to interrogatories that the third-party payroll administrator divided the companies into "divisions" which related to the individual restaurants and that employee hours were entered according to the division in which their hours were reported. (Interrogatory Answers, Resp. to Interrog. No. 9.) The Defendants provide no evidence that they requested that the third-party administrator track and combine hours worked at the various restaurants. In fact, the Defendants do not allege that the third-party

---

application for the West Center Famous Dave's. Vargas had provided the same spelling for his first and last name, and the same social security number on both applications. (Diamond Dep. 59:23-60:5 and 61:12-62:14.) The Court finds the Defendants' argument that any employee attempted to hide his or her identity to be disingenuous.

administrator, or anyone else, provided any affirmative, objective advice regarding the non-payment of overtime. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002) ("Nor has [the defendant] suggested that it was relying on the expertise or opinion of any other person or entity with knowledge of the FLSA regulation, including its attorney or the Department of Labor").

The Defendants have not met their burden of showing that they acted reasonably and in good faith. The evidence shows that they were aware or should have been aware that these employees were working at multiple locations. The Defendants provide no evidence that they made any effort to ascertain who was working more than 40 hours in a workweek or to ensure that the third-party administrator was tracking hours properly. Thus, the Court finds that liquidated damages are proper in this case.

**POST-JUDGMENT INTEREST**

Post-judgment interest should be awarded in addition to liquidated damages. *Lopez v. Rodriguez,* 668 F.2d 1376, 1381 (D.C. Cir. 1981). Although liquidated damages take the place of prejudgment interest in compensating employees for delay in payment, post-judgment interest serves a different purpose:

> Post-judgment interest, by contrast, is allowed 'on any money judgment in a civil case recovered in a district court . . . calculated . . . at the rate allowed by State law.' 28 U.S.C. § 1961 (1976). Relying on this statutory provision, courts have awarded post-judgment interest in FLSA actions despite their denial of pre-judgment interest.

*Id.* at 1381, n.10. In *Keen v. Mid Continent Petroleum Corp.*, 63 F.Supp. 120, 141 (N.D. IA 1945), the Court made a point of distinguishing pre-judgment interest on back wages and liquidated damages, and interest on a "judgment as a judgment," in stating that interest on

17

a judgment for back wages and liquidated damages were both proper.  Therefore, the Court finds that an award of post-judgment interest is proper in this matter.

**INJUNCTION**

The question of whether an injunction should be granted is left to the sound discretion of the Court. "Where there has been a clear violation of the statutes and regulations, . . . there should be assurances that the offending party will in the future voluntarily comply with the Act." *Wirtz v. Flame Coal Co.*, 321 F.2d 558, 560 (6th Cir. 1963). Even when an employer has discontinued violations, an injunction will be granted unless the existence of good faith and cooperativeness are manifested. *McComb v. Wyandotte Furniture Co.*, 169 F.2d 766, 770 (8th Cir. 1948).

As of January 31, 2007, Greg Cutchall became the owner of all five Famous Dave's restaurants. (Filing No. 31, Exhibit 6). The restaurants now have in place a master roster of employees who work at any of the Famous Dave's locations, cross-referencing employees employed at multiple locations. (Supplemental Interrogatory Answers, Resp. to Interrog. No. 15.)  For individuals working at multiple locations, Defendants now monitor the employees' hours to ensure that all hours are paid at the correct rate under the FLSA. (*Id.*)  Additionally, Cutchall testified  that he has in place at his twelve Popeye restaurants work rules to ensure that employees working at multiple locations receive proper overtime compensation.  (Cutchall Dep. 17:25-18:17.)

The Court finds that there is evidence of the Defendants' present good faith and cooperativeness, and that the new management has shown that it will voluntarily comply with the FLSA in the future.  Therefore, the Court denies DOL's request for an injunction.

Therefore, it is ordered:

1. The Defendant Barbeque Ventures, LLC, and the Defendant Old Market Ventures, LLC, are deemed joint employers from May 2004 until March 2006;

2. The Defendants are jointly and severally liable for back wages owed to twelve jointly employed employees in an amount totaling $32,417.87;

3. The Defendant Barbeque Ventures is liable for back wages owed to its employees in an amount totaling $57,637.80;

4. The Defendants are liable for liquidated damages in an amount equal to the back wages;

5. The Defendants are liable for post-judgment interest at the federally mandated rate; and

6. DOL's request for an injunction is denied.


DATED this 12th day of December, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge